*320 Opinion of the Court, by
Ch. J. Boyle.
IN 1809, Richardson purchased of Andrew M’Kinson, 90 acres of land, on which there was a mill-seat, with a dam and the remnant of an old saw-mill; paid part of the price, and gave his notes for the payment of the residue; and M’Kinson executed to Richardson his obligations to re-build the saw-mill and for a conveyance of the title. Richardson, after making some further payments, sold to Laudeman, and transferred to him M’Kinson’s obligation for a conveyance, the latter having, in the mean time, re-built the saw-mill and taken up his obligation therefor. Some time subsequently thereto, Laudeman purchased of John M’Kinson, the father of Andrew, a farm, with 100 acres of land, adjoining the tract of 90 acres, gave his obligation for the price agreed on, and took John M’Kinson’s obligation for a conveyance. Laudeman was put into possession of the 90 acres sold by Andrew M’Kinson, and erected a grist-mill and saw-mill thereon, the one re-built by Andrew M’Kinson having been swept away by a flood.
In this state of things, Laudeman and Richardson filed this bill against Andrew and John M’Kinson, to set aside both contracts, and to have the money paid, refunded, and a compensation for improvements, alleging as grounds for the relief sought, that the defendants had fraudulently misrepresented the constancy and force of the stream on which the mills were built, and that in fact neither of them was able to make a good title *321 to the tract sold by him. The bill abated by the death of John M’Kinson, and was revived against his representatives; and on a final hearing, the circuit court decreed the bill of revivor against the representatives of John M’Kinson to be dismissed without prejudice, on the ground that he was improperly joined in the suit, and decreed the contract with Andrew M’Kinson, for the 90 acres, to be rescinded, because of his inability to make a good title thereto, and appointed commissioners to make and report an estimate of the lasting and valuable improvements made by Laudeman, and the rents from the time he took possession. The commissioners so appointed made their report, to which the defendant filed exceptions, alleging that the improvements were valued too high and the rents too low; and in support of the exceptions, introduced witnesses to give testimony ore tenus, to which the complainants objected; but the court overruled their objection, and on hearing the evidence offered on both sides, quashed the report, to which the complainants excepted. The court then appointed other commissioners, and directed them, in the estimate of rents, to allow what the premises would have been reasonably worth, to a person who would have managed them with a reasonable degree of skill and care, making a deduction for necessary repairs, and that, in connection with this view of the rents, they should report the value of the lasting and valuable improvements, according to their real cost, at the time of making them; and the court further directed the commissioners to report the value of said improvements at the time of pronouncing the interlocutory decree rescinding the contract, together with the rents or profits actually made by Laudeman. These commissioners made a report, which, on the motion of the complainants, was quashed, and does not appear in the record; and other commissioners were appointed in their stead, who made a report of the value of the improvements at the time they made the estimate, and of the rents, according to what the premises would have been reasonably worth, to a person who would have managed them with a reasonable degree of skill and care, and alleged they could make no further report, for want of evidence. The complainants moved to quash this report; but the court overruled their motion, and entered a final decree accord *322 ing to the report, and in pursuance of the interlocutor decree.
In such case, an inquiry how much the premises would have been reasonably worth, annually, to a man of ordinary industry and diligence, is alike unnecessary and irrelevant.
In such case, the vendee will be entitled to pay for the improvements made by him, when the premises go out of his hands into the hands of the vender.
*322 To the decree dismissing the bill of revivor against John M’Kinson’s representatives, Laudeman has prosecuted his writ of error, and Richardson and Laudeman have prosecuted a writ of error to the final decree entered up according to the report of the commissioners last appointed.
Of the decree dismissing the bill of revivor, we cannot think that Laudeman has any just cause to complain. To prevent confusion, and to preserve as much simplicity as possible in suits in chancery, it is a settled rule, neither to permit several complainants to demand, by one bill, several matters perfectly distinct and unconnected, against one defendant, nor one complainant to demand several matters of distinct natures against several defendants. Thus, it is said, if an estate is sold out in lots to different persons, the purchasers could not join in exhibiting one bill against the vender for a specific performance, and that there must be a distinct bill upon each contract; nor could such vender, on the other hand, file one bill for a specific performance against all the purchasers. Cooper’s Equity, 181. Richardson might, with propriety, join with Laudeman in exhibiting the bill against Andrew M’Kinson, to rescind the contract for the purchase of the 90 acres, because he was a party to that contract; but he could not join in a bill against John M’Kinson, to rescind the contract made with him by Laudeman for the 100 acres; for he was no party to that contract, and had no interest in either its execution or rescision. According to the rule before noticed, even Laudeman could not, in a bill filed by himself alone, demand the rescision of both contracts; for they were made between different persons, at different times, and for distinct parcels of land, and therefore constitute several causes of action. It is true, that both the M’Kinsons claim under the same title, and if the bill had been brought for the purpose of coercing the title from those who hold it, and the complainants had made them parties, there would have been some propriety in demanding the title for both parcels of land in one suit; but the bill in this case not being brought to coerce the title from those who hold it, but for the purpose of rescinding the contracts, each contract must, in its nature, constitute, *323 for that purpose, a separate cause of action, and upon each a several decree could alone be rendered. The decree, therefore, dismissing the bill of revivor against John M’Kinson’s representatives, must be affirmed with costs.
The errors assigned on the writ of error brought by Richardson and Laudeman to the final decree entered upon the last report of the commissioners, question, as well the propriety of the refusal of the circuit court to quash that report, as the correctness of the decision of the court in relation to the first report.
We have no hesitation in saying that the court erred in not quashing the last report of the commissioners. The mode adopted in that report, of estimating the improvements according to their real value in the condition in which they were when the commissioners acted upon the subject, was undoubtedly proper; but the mode in which they estimated the rents, cannot be conceded to be correct. Neither party ought, in a case of this sort, to be enriched, to the prejudice of the other. Nemo debet locupletari aliena jactura, is a maxim of the civil law, founded in natural justice, and which has been frequently recognized and acted upon by courts of equity, both in England and in this country. An estate may be made more or less productive, according to the degree of skill and care with which it may be managed; but the possessor cannot be said to be enriched, in any case, beyond the actual profits he has received; and a purchaser, in a case of this sort, ought not to be responsible for more. It has been accordingly held, where a purchaser has been let into possession, and the purchase cannot be completed, on account of defects in the title, that he is not bound to pay rent, beyond the actual profits he has made. Sugden, 10.
It is apparent, therefore, as the commissioners in their last report estimated the rents, not according to the actual profits received by Laudeman, but according to what the estate would have produced, if it had been managed with a reasonable degree of skill and care, that the estimate was erroneous, and of course the report, on that ground, ought, we think, without deciding the other exceptions taken to it, to have been quashed.
We are also of opinion that the circuit court erred in setting aside the first report of the commissioners, on *324 the exceptions taken to it by M’Kinson. We do not deem it material to decide whether testimony ore tenus was admissible to impeach the report; for, conceding the evidence to be properly admitted, it does not, we apprehend, show that M’Kinson had any just cause to complain of the report. It appears that the commissioners, in making their estimate of the improvements, valued them according to what they thought them to be worth at the time they acted, and there is nothing in the evidence tending to prove that they labored under any undue bias, or that they were in any respect incompetent to make a just estimate of the improvements. It is true, that several of the witnesses called by M’Kinson, place a lower value on the improvements than was reported by the commissioners; but the value of a thing is but matter of opinion, and the opinion of witnesses selected by one party for the purpose of depreciating the value, ought not to outweigh the opinion of the commissioners selected by the court with the assent of both parties.
With respect to the rents reported by the commissioners, it may be remarked, that if what the estate might have produced, with a reasonable degree of skill and care in its management, were to be taken as the criterion, the rents reported by the commissioners would, from the evidence in the case, appear to be too low; but if the actual profits received from the use of the estate, be, as we have supposed, the true criterion, then it is apparent from the evidence that the rents reported by the commissioners, instead of being too low, are considerably higher than they ought to have been.
The final decree of the circuit court, therefore, must be reversed with costs, and the cause be remanded, that a decree may be entered upon the first report of the commissioners, and in conformity to the interlocutory decree of the circuit court.